**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL ACTION NO. 6:21-CR-00013-GFVT**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**V.**                                  **PLEA AGREEMENT**

**HELEN BIDAWID**                                            **DEFENDANT**

\* \* \* \* \*

1.  Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 21 U.S.C. § 846, conspiracy to unlawfully distribute controlled substances, and Count 20, engaging in a monetary transaction in criminally derived property of a value greater than $10,000. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss all remaining counts in the Indictment as to the Defendant.

2.  The essential elements of Count 1 of the Indictment are:

    (a)     First, that two or more persons conspired, or agreed, to knowingly or intentionally distribute controlled substances in an unauthorized manner, that is, through prescriptions that were not issued for a legitimate medical purpose by a practitioner acting within the usual course of professional practice; and

    (b)     the Defendant knowingly and voluntarily joined in this conspiracy.

3.  The essential elements of Count 20 of the Indictment are:

    (a)     that the Defendant knowingly engaged in a monetary transaction;

1

(b)     that the monetary transaction was in property derived from specified unlawful activity;

(c)     that the property had a value greater than $10,000;

(d)     that the defendant knew that the transaction was in criminally derived property; and

(e)     that the monetary transaction took place within the United States.

4.   As to Counts 1 and 20 of the Indictment, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a)  At all times relevant to the Indictment, the Defendant was a licensed medical doctor in Tennessee.

(b)  The Defendant held a registration from the Drug Enforcement Administration ("DEA") that authorized her to prescribe controlled substances. The Defendant also obtained a DATA waiver authorizing her to prescribe Schedule III narcotic controlled substances, namely buprenorphine drug products.

(c)  Beginning in approximately April 2014 and continuing through November 2018, the Defendant was associated with EHC Medical Offices, PLLC, d/b/a "EHC" and "Express Health Care," in Jacksboro, Campbell County, Tennessee.

(d) EHC held itself out as a clinic to treat patients who suffered from opioid use disorder. Almost all patients treated at EHC received prescriptions for buprenorphine, a Schedule III controlled substance.  EHC employed a number of physicians, including the Defendant, who were putatively engaged in addiction medicine, primarily prescribing buprenorphine, a schedule III controlled substance.

(e) During the course of the Defendant's employment at EHC, the Defendant and other EHC physicians issued prescriptions for controlled substances, to include buprenorphine, a Schedule III controlled substance, and certain benzodiazepines, including clonazepam, that are Schedule IV controlled substances. These prescriptions were not authorized, that is, they were not issued for a legitimate

2

medical purpose by an individual practitioner acting in the usual course of his or her professional practice in violation of 21 U.S.C. § 841(a)(l). The Defendant acknowledges that she knew that she and other EHC physicians were not adhering to accepted standards of addiction medicine when writing such prescriptions, but she continued prescribing controlled substances in this fashion while associated with EHC.

(f) Although she was not in charge of EHC's patient scheduling, the Defendant was nevertheless ultimately responsible for ensuring that she treated a reasonable number of patients per day that left her appropriate time to examine, assess, counsel, and treat each patient on an individualized basis. The Defendant admits that she sometimes spent less than the appropriate amount of time with patients. Doing so rendered her medical care and decision-making (including her prescribing decisions) illegitimate and outside the scope of professional practice. Examples of the dates on which the Defendant failed to spend an appropriate amount of time with her patients included the following:

(i) On or about February 1, 2016, the Defendant prescribed 90 doses of buprenorphine to "J.L." She prescribed to approximately 65 other patients at EHC that same day. J.L. was a resident of Williamsburg in Whitley County in the Eastern District of Kentucky.

(ii) On or about December 31, 2015, five EHC physicians, including the Defendant, prescribed buprenorphine to approximately 345 patients, which patients included residents of the Eastern District of Kentucky. The Defendant prescribed buprenorphine to approximately 74 patients herself on that day alone.

(g) The Defendant further admits that she and other EHC physicians knowingly issued prescriptions that were not authorized, that is, they were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice, to the patients identified in the report of Dr. Mark Jorrisch, which has been disclosed to the Defendant and which the Defendant has reviewed. This includes prescribing 90 dosage units of buprenorphine on August 30, 2018, to patient M.S., who the Defendant understood to be a resident of the Eastern District of Kentucky. This further includes prescribing 90 dosage units of buprenorphine on March 9, 2018, to patient J.V., who the Defendant understood to be a resident of the Eastern District of Kentucky.

(h) The Defendant also acknowledges that EHC used standardized forms for documenting patient visits. The Defendant routinely made entries on these forms to

3

indicate that she performed certain medical evaluations or consultations with other EHC physicians that she did not, in fact, perform.  This gave the impression that she was conducting more thorough patient encounters prior to issuing controlled-substance prescriptions than what actually occurred. The Defendant understood that other doctors at EHC were creating similar false entries in the patient files.  For example, on March 9, 2018, the Defendant completed and signed an "OBOT Therapy Progress Report" form and an "Individualized Treatment Plan and Goals" form which misrepresented the nature and extent of her treatment of and interactions with patient J.V.

(i) On or about March 10, 2017, the Defendant received a transfer in the amount of $14,609 from EHC's operating account to her account at ORNL Federal Credit Union (account xxxxx3010).  The Defendant agreed to and engaged in this transaction knowing that the funds were criminally derived property that was derived from the unlawful distribution of controlled substances.

5.   The statutory punishment for Count 1 is imprisonment for not more than 10 years, a fine of not more than $500,000, and a term of supervised release of not less than 2 years.  The statutory punishment for Count 20 is imprisonment for not more than 10 years, a $250,000 fine or twice the value of the criminally derived property involved in the transaction, whichever is greater, and 3 years supervised release.  A mandatory special assessment of $100 per count of conviction applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6.  Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations.  This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2021, manual, will determine the Defendant's guidelines range.

**Count 1**

4

(a) Pursuant to U.S.S.G. § 2D1.1, the base offense level is 18 because the Defendant's relevant conduct includes a drug quantity of more than 40,000 but less than 60,000 dosage units of buprenorphine.

(b) Pursuant to U.S.S.G. § 2D1.1(b)(18), if the Defendant meets the criteria set forth in U.S.S.G. § 5C1.2(a), decrease the offense level by 2 levels.

(c) Pursuant to U.S.S.G. § 3B1.3, increase the offense level by 2 levels because the defendant abused a position of public or private trust, or used a special skill, namely his role as a physician, in a manner that significantly facilitated the commission or concealment of the offense.

## Count 20

(d) Pursuant to U.S.S.G. § 2S1.1(a)(1) and Application Note 2(C), the base offense level for Count 5 is 16 (*i.e.*, the offense level for the underlying offense from which the laundered funds were derived, less any Chapter 3 enhancement for the underlying offense conduct).

(e) Pursuant to U.S.S.G. § 2S1.1(b)(2)(1), the offense level is increased by one level because the Defendant was convicted under 18 U.S.C. § 1957.

## Total Adjusted Offense Level

(f) Pursuant to U.S.S.G. § 2S1.1, Application Note 6 and U.S.S.G. § 3D1.2(c), Count 5 groups with the Count 1 such that they collectively constitute one count group because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other count(s). Specifically, the base offense level for Count 5 is determined in consideration of the Chapter Two offense level for Count 1.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

5

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. Nothing in this Plea Agreement shall prohibit the Defendant from asserting "that there are exceptional reasons why [the Defendant's] detention would not be appropriate" while awaiting sentencing pursuant to 18 U.S.C. § 3145(c) provided the Defendant does not violate the terms of the order setting conditions of release.

11. The Defendant consents to, and agrees that she will not contest, the seizure and forfeiture of $7,074.26 in U.S. Currency seized from her account xxxxx3010 at ORNL Federal Credit Union. The Defendant further agrees that these funds are subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881 and 18 U.S.C. §§ 981(a)(1)(C) and 982(a) because the United States can prove that they represent proceeds of a violation of 21 U.S.C. § 846 and/or property involved in a violation of 18 U.S.C. § 1957. The Defendant agrees to execute any documents necessary to effectuate the seizure and forfeiture of the funds identified in this paragraph and to provide any assistance necessary to facilitate passing clear title to the funds to the United States. The Defendant further agrees that she waives

6

all rights to contest, and will not object to, any forfeiture proceedings brought against these funds and that she will withdraw any claims that she has made against the forfeiture of these funds, including any claims made in the related civil forfeiture proceeding (Civil Action No. 6:18-cv-315). The Defendant further agrees to the imposition of a forfeiture money judgment against her in the amount of $14,609, which represents the amount of criminally-derived funds at issue in the transaction described in Count 20 of the Indictment. The Defendant agrees that forfeiture is mandatory and authorized for the offenses to which she is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant further agrees that the forfeiture money judgment constitutes a debt owed to the United States that is separate from any fine or penalty ordered by the Court and that shall survive bankruptcy. The Defendant waives any and all timing provisions under Federal Rule of Criminal Procedure 32.2 and consents to the entry of an order of forfeiture imposing the money judgment. The Defendant also consents to the forfeiture of any other property of hers up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), to the extent that it is not otherwise paid in full.

12.   The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place

7

within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13.   The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time.

8

The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

14.   If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15.   This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16.   This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17.   The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: _4 | 13 | 23_          By: _____   _Amanda Huang_
                                                   _for AES_
                              Andrew E. Smith
                              Gregory Rosenberg
                              Assistant United States Attorneys

9

Date: 4-13-23        _____

Helen Bidawid
Defendant

Date: 4/13/23        _____

Greg Ousley
Attorney for Defendant